Good morning, Justices. My name is Reynolds Finnegan. I'm here on behalf of Alesia Kazakevich. I would like to reserve two minutes for a rebuttal argument, if possible. In this matter, I believe it's critical. It comes down to – boils down to the two overseas reports alleging that the documents were fraudulent. The petitioner is arguing that these reports are defective on their face and unreliable. I know there was a case law in Bank Decision, ANGOV, which states that aliens are not entitled to due process. However, this alien had a legal entry, so I believe she is entitled to due process under the ANGOV holding. Before you get there, Counsel, there's a threshold question of whether this is – this action is timely. And you would concede that the application for asylum was more than a year after she entered. And I know that you had briefed before the BIA the question of were there extraordinary circumstances that excused that. But you have to also show that the action or the petition was brought within a reasonable time. And that was not raised in your brief before the BIA. I looked through it, and there are a lot of briefing about incompetency of counsel and everything else, but nothing that explains the 16th month delay from the time that Ms. Kazakiewicz lost contact with her counsel, who was, I guess, trying to seek some kind of labor certificate or something, and the time she finally retained counsel and did something on her asylum petition. So there's a 16th month gap there, and I don't think any court has held that's a reasonable period of time. So please address that. Yes, Your Honor. Well, first of all, I believe the report goes to all three claims, which is the asylum withholding and the CAD claims. But in the immigration court, an immigration attorney argues for one of the exceptions. Once the court finds that one of the exceptions exists or lies, then usually it goes to was it filed within a reasonable time period. I believe in this case, I don't know if we got that far, because I believe the judge never really accepted the exception that there was ineffective assistance of counsel. So that excuses your omission in making that second-prong argument before the BIA? Not that it excuses it, but I don't believe the argument's been waived. The government argues the argument was waived because it wasn't raised in the brief. But the one-year exception was raised in the brief considerably. We never got to the issue of reasonable time period. But I believe that if the judge had accepted the exception, she would have questioned the respondent on whether it was a reasonable time period. Well, but when you file an appellate brief, you hope that you win on the first issue, and you also hope that you win on the second issue. So when would you have raised it? I mean, the BIA, let's say, ruled in your favor, found extraordinary circumstances due to ineffective assistance. Would it then remand back to the IJ to make another determination of reasonableness? Shouldn't it all be raised on one appeal? Good point. But like I said, the issue was not waived. It's kind of presumed that when you're arguing one of the exceptions, you're arguing when it was filed within a reasonable time period. I didn't know that it had to be expressly argued, because otherwise why would you need the exception unless you're arguing it was within a reasonable time period? The immigration judge said even if her failure to comply with these regulatory requirements, talking about the timeliness, could be excused, she still must establish that she filed the asylum application within a reasonable period of time.  So why wasn't it reached? I mean, that seems like it was reached, and I don't see the challenge to that discussion by the IJ when you went to the BIA. And for that matter, I don't see the challenge to that particular issue here. I mean, where in your brief to us do you contest the finding by the IJ, which the BIA expressly repeated, that even if we get pie the ineffective assistance of counsel and accept that as extraordinary circumstances, Petitioner hasn't demonstrated that the filing was within a reasonable period. And I look at the brief that's been filed with us, and I really don't see any argument on that subject to us either. If it's not there, then asylum is just off the table. I guess if you've gone through it and it's not there, it's not there. Okay. So we need to move on to withholding and CAT then? I always thought it was presumed inside the argument. Well, but if the BIA says in so many words as it did that her application is nevertheless barred by the one-year filing deadline due to her failure to establish she filed her asylum application within a, quote, reasonable period, close quote, of the claimed extraordinary purposes, that's an alternative ground. If it's not argued to us, then it stays in place. So what else do you have? I mean, I see your point. Then it would be withholding and CAT. Okay. And we would like to proceed with those claims, obviously. Those are mandatory forms of relief, not discretionary forms of relief. So if the applicant does qualify, the judge is supposed to grant those cases. In this case, she would qualify for withholding if her credibility finding was reversed, I believe. If you look at the reports, like I said, there's a question whether this investigator is a government employee or not. The reports. I mean, whether the person is a government employee or not, if this person says there's no police department or no prosecutor's office at this address and she has time and she can't come up with a picture of the prosecutor's office at that address or any map, I mean, why isn't that just on its own dispositive? Because if the report should not be admissible is the argument. If you look at Keith v. Volpe, it states that these reports are entitled to a presumption of trustworthiness because they're government prepared. If a nongovernment person is the key person preparing the report or investigating, then I don't believe it's entitled to this presumption. But, I mean, I don't even know if you need a presumption. I mean, if anyone comes and shows us a map of the city and says she's lying, there's no office there, and it's true because she can't show there is an office there, then isn't that a lie? And then how do we get past that? We couldn't cross-examine the preparer of the report. What are you going to cross-examine? Either Mr. Kufta or Mr. Sandiego. But on what subject? We have a specific report that there's no prosecutor's office at that address. There's not a lot you can cross-examine about, and the opportunity is clearly there to come back with whatever evidence might be available. I mean, if there is a prosecutor's office there, it shouldn't be that hard to prove. If you look at Respondent's brief on page 40, they specifically say, why didn't we present evidence and argue that there was an improper contact between Mr. Kufta? Did we not argue Mr. Kufta was a government employee or not? We couldn't argue any of that because I couldn't cross-examine the preparer. But this, we're talking about an objective fact. There are some things I understand why cross-examination could be useful, but the objective fact of the address, that could have been ascertained in some way and presented in rebuttal. She was given time by the IJ to come up with a rebuttal, and unlike some cases, she didn't come up with anything. Okay. That's a valid point. But if the report's unreliable, I believe there's no evidence on the other side either. Petitioner didn't present evidence, but the government's evidence is faulty. So I believe we're at a neutral evidence posture is what I would assert. May I reserve the remaining time? You may. Thank you. Good morning. May it please the Court. Sarah Bird on behalf of the Respondent, the Attorney General. This Court should deny the petition for review because substantial evidence supports the agency's adverse credibility determination. In matter of OD, the Board held that submission of even one counterfeit document is sufficient to undermine the credibility of the testimony. And this Court has agreed with that holding. This Court has held particularly agreed with it when, in matter of OD, distinguished between documents that were just to flee the country and documents that go to the heart of the claim. And here we have documents that go to the heart of her claim, her claim that she was interviewed by a prosecutor and that she was imprisoned and then hospitalized for two weeks in the brain surgery unit. But then overseas investigators did some basic fact-checking and found that the basic facts underlying, some of the basic facts underlying those particular documents she submitted in corroboration of her testimony simply weren't true. And in... That is based on more or less triple hearsay. In the origin of the source, the foreign affairs official in Belarus, we know nothing about that person. We don't know who it is, what their position is, nor the nature of the conversation between that person and the U.S. agent. I mean, this was discussed in ANGO, so I understand in terms of the statutory right of cross-examination, I guess that's been answered now. But here you admit there is a due process right that can vest. Absolutely. So I guess the question is, does, is there a different analysis under due process? Several circuits, including the fourth, have applied a due process analysis, not just a statutory cross-examination. Would that result, would the result be the same here? I would say that ANGOV controls with regard to the statutory analysis. Yes. But also informs with regard to the due process analysis because the statutes themselves are clearly designed to make the proceeding fundamentally fair. A reasonable opportunity to review the evidence against her, an opportunity to cross-examine. Those are the statutory rights that were addressed in ANGOV and are controlled by ANGOV. And ANGOV even says there's nothing unfair about having a U.S. government agent check out some of his, the basic facts. So that goes to the fairness, although that, you know, could be arguably dicta since it wasn't decided in a due process. I think it's persuasive. I would also note that the Fourth Circuit case that you're talking about and some of the others that address, that ANGOV disagreed with, those didn't create some sort of distinction between the statutory rights and due process. It wasn't as if you could somehow clear the statutory rights and yet still violate due process. They basically said, well, there wasn't a reasonable opportunity to review the evidence or they decided to essentially own the statutory rights but just decided to own due process, whereas Lynn, the Second Circuit, skipped due process and went to the statutory rights and substantial evidence. So I have not been able to find anything that distinguishes in that fine-toothed way saying, well, there's some right that's not covered by the statute but that is then violated by an overseas investigation. Roberts. Apparently in part due to the fact that some other circuits view the statutory right a little differently than this circuit. That's true. Most of the circuits seem to get to one and not reach the other. But, which makes sense, they don't go through the statutory rights and find those satisfied but then find that due process was violated. Is there some reason why, because of the availability of video conferencing and this sort of thing, that I know the agent was not in the country, but I'm just wondering practically why not make that person available through Skype or some other video conferencing? Well, certainly the technology availability has improved to that point. So I see your point. I think that DHS argued that given his other responsibilities and the fact that he was stationed overseas, it was unreasonable. But I think we need to take a step back. This Court has held in numerous places, regardless of whether a government official is overseas or not, that presentation of a government, official government form is entitled to a presumption of reliability and there's no automatic right to cross-examine the author. The form really doesn't tell us as much as we usually get, though. I mean, it is the triple hearsay element that gives me some pause, because even if we could get somebody from the embassy connected via Skype, that person can only report what he's been told by somebody else that that person was told by somebody else. The original source here appears to be somebody within the Ministry of Foreign Affairs. That's right. It appears that they used someone in the Ministry of Foreign Affairs to check some of these facts, such as was the prosecutor's office ever located at this particular address or is someone with the name of the prosecutor there? I understand the logic of that, except you've got somebody who's claiming persecution by officials in that country. Is that, on its face, a reliable source? I mean, think about it. If, I guess we've normalized relations. North Korea, there we go. We're still hostile to North Korea. So you've got somebody claiming they were persecuted in North Korea, and are we going to check that out by asking the Ministry of Foreign Affairs there? Well, we wouldn't ask them, did you persecute so-and-so? That would be a clear violation of confidentiality. But I think the presumption that government officials stationed overseas discharge their official duties reliably includes, and Angoff says this, includes the presumption that down the chain they rely on people that, to the best of their ability and their official duties, they consider reliable sources. Well, that's one thing that at least could have been provided. Why did the U.S. official rely on this Ministry of Foreign Affairs person? I mean, what stature was a person? Did he deal with them before? I mean, when we deal with confidential informants and trying to determine whether there's probable cause, you have to show either corroboration, past history of reliability, et cetera, et cetera. Why didn't they at least give some information? Had they relied on this person before? Had it proven truthful? Well, I agree that that information is not here, and I can't tell you why it's not here. But I think that that goes to the weight of the document. And the immigration judge is then faced with weighing a document that, as you say, doesn't give all that information. And in this case, hearsay is admissible, but then does go to the weight. But weighing that versus a 90-day continuance with no rebuttal evidence whatsoever, and that's the decision that the immigration judge is faced with, is how to weigh that evidence. And so in this case, although that information would have helped to inform the weight that could have been given to the document, because Petitioner didn't provide any rebuttal evidence, even as to some of these basic facts, it simply, the hearsay there hasn't, she hasn't overcome the presumption of regularity and the presumption of legitimacy for a government form and a government report. And as to the due process issue, I also wanted to mention that several of the cases, Bondurango and Sanapien, are cases in which overseas investigative reports have been admitted, and this Court has found that it violated due process. But both of those cases, it was because no continuance was given. It was admitted as impeachment evidence on cross-examination, and then there was no rebuttal evidence. So this, and in fact in Sanapien, this Court stated that if that circumstance arose, and without advance notice, it was presented on cross-examination, the immigration judge had to either not admit the DHS evidence or continue the case. And here the immigration judge did that. She continued the case and allowed rebuttal evidence, and then the government report is presumptively reliable, although as you say, it doesn't contain all the information that could have been helpful for weighing it. But in light of the fact that Petitioner came back with no rebuttal evidence, it's sufficient to support, to be substantial evidence to support the adverse credibility determination. Is it sufficient on its own, or do we also need the visa application statements? I would say that it is sufficient on its own, yes. And that's a matter of O.D. And these go to the heart of the claim, even more so than the visa application. Whether she went to the prosecutor's office, whether she was hospitalized, that's the heart of her claim. Now the visa application misstatements, I think are weaker, to be quite frank. I think that because of the case law saying that if someone is fleeing the country, now in her testimony she didn't claim that that's why she gave misstatements on her visa application. It seems like she might have thought that, though. I mean, it's pretty reasonable for her to think she should lie in those ways on the visa application, it seems. And that she might have thought she was going to live in Alaska even if her plans changed. And I would agree that if that were the only inconsistency or misrepresentation in this case, it would be a very different case. But in the totality of the circumstances, the immigration judge considered that plus inconsistencies in her testimony. Her asylum statement didn't even completely omitted the prosecutor visit, instead that she went to the state security office. So that's an inconsistency. And my time is up, but I would say substantial evidence supports the adverse credibility determination. Thank you. We'll have rebuttal. Your Honor, there's one point I want to make before I get questions. If you look at both reports, it says that USCIS Moscow is aware of the confidentiality requirements. But it does not say USCIS Minsk was aware of those confidentiality requirements and abided by them. So I believe that that's an issue that we should consider, which is whether there was a breach of confidentiality The BIA decision, the IJ, they both relied on this statement as to why there was no breach or even couldn't even raise it. However, it doesn't show that it was consistent through the chain without having U.S. Minsk. Why do we assume that the first person who was contacted, who was responsible for the port, ever told the second person? I mean, the inquiry is simply about the hospital record, for example. And so the second person couldn't have reached confidentiality if the second person didn't know the reason for the inquiry. Right. I believe it raises the question, why would they be asking about a prosecutorial paperwork? It's obviously not a marriage case. It's not a marriage petition. Well, they don't know that. They don't know what kind of case it is. Yeah. Most of the investigations are probably related to asylum. People in the country don't know it, but I believe the investigators will know it. Well, isn't the concern that people in the country will know it? I mean, the concern is that the people in the country will retaliate. But if they don't know whether it's a marriage case or any other kind of case, then they have no reason to retaliate. Right. But I was answering Justice Friedland's question about how would the investigator in Minsk know about it. And I believe he would know about it because he's probably doing dozens of these, and they're all probably asylum-related. So even if Moscow doesn't inform him, he... That sort of underscores your point about the value of cross-examination. That's something that you could have looked into? Yes. I was just about to say that. Without cross-examination or more detail, we really don't know exactly what happened, exactly what was said. And it also raises the question whether Mr. Kukda is a government employee or a government contractor. He doesn't have a title of assistant officer like the other people do, which under Keith v. Volpe, I believe, would take us out of the presumption of trustworthiness. Thank you. We thank both counsel for your helpful arguments. The case just argued.
judges: Clifton, Friedland, Chen